IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCISCO A. ACOSTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-0861-D |
| VS. | § | |
| | § | |
| INSIGNIA ENERGY GROUP, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and Texas law, defendants move to strike plaintiff's amended complaint and to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) and 9(b).  For the reasons that follow, the court denies the motion to strike as moot, grants the motion to dismiss plaintiff's civil RICO claim and declines to reach his state-law claims, and grants plaintiff leave to replead.

I

In 2006 plaintiff Francisco Acosta ("Acosta") and defendant Insignia Energy Group, Inc. ("Insignia") entered into a Working Interest Agreement ("WIA") under which Acosta paid $28,413.00 to acquire an undivided 3.125% working interest in two oil wells (the "Wells") to be drilled in Sabine Parish, Louisiana.[1]  At the time Acosta entered into the WIA,

_____

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Acosta, accepts as true all well-pleaded factual

defendant Martin Lewis[2] ("Lewis"), the President of Insignia, represented to Acosta that the business venture was a "turnkey" operation and that profits would commence shortly after the WIA was signed, estimating that the wells would produce a 40% annual return on initial investment.  To date, Acosta has only received $703.12.

On October 10, 2008 Insignia sent Acosta an invoice for expenses totaling $3,782.91. Lewis represented to Acosta that the Wells would be operational soon (in 30 to 60 days). Allegedly in reliance on Lewis' statements, Acosta paid Insignia the invoiced amount in the spring of 2009.  The Wells, however, never resumed oil production.

In an October 30, 2009 letter, Insignia demanded payment of $2,985.88 and stated that, pursuant to the terms of an Operating Agreement (which Acosta maintains he does not recall signing), if Acosta failed to pay the invoiced amount within ten days, he would lose his interest in the Wells.  Lewis told Acosta that defendant Benchmark Operating Group LLC ("Benchmark") had taken over as the new operating company and required the payment immediately to cover expenses.  When Acosta refused to pay the invoiced amount, Lewis

---

allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]On May 1, 2014 the court was notified that Lewis had filed for bankruptcy.  The court, in turn, filed an order stating that, under § 362 of the Bankruptcy Code, the automatic stay was now in effect, and it directed that this action be administratively closed for statistical purposes as to Lewis.  In an August 1, 2014 status report, defendants state that, according to the PACER docket sheet for Lewis' bankruptcy case, his bankruptcy was dismissed on May 23, 2014.  Notice regarding the termination of Lewis' bankruptcy has not been provided, however, to the court.  Because no basis has been demonstrated for concluding that the court cannot decide defendants' motion to dismiss as to the other defendants without violating the automatic stay as to Lewis, the court will decide the motion to dismiss on the merits.

agreed that he would pay the expenses "out of his pocket," so long as Acosta would agree to give Lewis, personally, a promissory note. Accordingly, on December 15, 2009 Acosta signed a promissory note to Lewis, allegedly to protect his interest in the Wells. Acosta later learned that Benchmark was owned and/or managed by Lewis.

In the fall of 2010, Acosta learned that one of the two Wells had become operational. He alleges that he was later informed that both Wells were determined to be dry wells and were converted to salt water storage tanks.[3] No payments were sent to Acosta, however, after production allegedly resumed, and, to date, no accounting of funds has been provided.

Acosta filed this suit against Insignia, Lewis, Benchmark, Martin D. Lewis Family Partnership, Ltd., and Melaina Frederick ("Frederick"), the Vice President and Director of Benchmark.[4] In his complaint, he alleged claims under RICO and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63,

---

[3]Defendants contend that one of the Wells (the Hogland Well) was completed as a well capable of producing in commercial quantities. The other well (the Delatin Well), however, was deemed to be a dry hole and was ultimately converted to a commercial saltwater disposal well. All working interest owners, including Acosta, were given an opportunity to participate up to their respective working interest ownership in the conversion of the Delatin Well to a saltwater disposal well, but, according to defendants, Acosta either elected not to participate or refused to respond to the election notice. Defendants also contend that, during the period of time it took to secure the necessary consents and permissions to convert the Delatin Well into a saltwater disposal well, the Hogland Well was shut in and did not produce.

[4]He also sues defendants Linville Lewis, Addison Capital, Inc., Ieg Permian Basin, L.L.C., Lewis II Holdings, LLC, and Sabine Partnership # 1, Ltd. but clarifies that his claims against these defendants are "limited in scope at this time pending discovery." Am. Compl. ¶ 9.

and under Texas common law for fraud, negligent misrepresentation, negligent hiring, supervision, and/or management; and breach of contract. When defendants moved to dismiss Acosta's complaint under Rules 12(b)(6), 12(b)(1), and 9(b) and for a more definite statement under Rule 12(e), Acosta responded, *inter alia*, by conceding that "certain portions of the complaint need to be clarified" and requesting leave to clarify such portions. P. July 23, 2013 Br. 9. The court denied defendants' motion under Rule 12(b)(1), granted Acosta leave to file an amended complaint, and denied without prejudice defendants' motions under Rule 12(b)(6), 9(b), and 12(e). Acosta then filed his first amended complaint.

Defendants now move to strike Acosta's amended complaint on the basis that it was filed three days after it was due. If the motion to strike is denied, they also move under Rules 12(b)(6) and 9(b) to dismiss Acosta's complaint or first amended complaint. Acosta has not responded to defendants' motions.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff['s] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (alteration and some internal quotation marks omitted). To survive defendants' motion to dismiss under Rule 12(b)(6), Acosta must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

- 4 -

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court begins with defendants' motion to dismiss Acosta's civil RICO claim.

A

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). "'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2

(N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.)).

Defendants contend that the first amended complaint fails to satisfy the required elements of a civil RICO claim. They argue, *inter alia*, that Acosta has failed to plead with particularity the predicate acts of mail and wire fraud, as required under Rule 9(b), and that he has failed to describe facts supporting a "pattern of racketeering activity," entitling them to a dismissal under Rule 12(b)(6).

B

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). "To state a claim for mail or wire fraud to support a RICO violation under § 1341 or § 1343, a plaintiff must establish three elements; '(1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) a use of the interstate mails or wires for the purpose of executing the scheme; and (3) a specific intent to defraud either by [d]evising, participating in, or abetting the scheme.'" *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 746 F.Supp.2d 819, 841 (S.D. Tex. 2010) (quoting *Hewlett-Packard Co. v. Byd:Sign, Inc.*, 2007 WL 275476, at *3 (E.D. Tex. Jan. 25, 2007)).

Rule 9(b) requires particularity in pleading the "circumstances constituting fraud."

"This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990)). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)). "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally." *Id.* (citing Rule 9(b)).

Acosta alleges the following predicate acts in support of his civil RICO claim: (1) at some point after Acosta received the October 10, 2008 invoice for expenses totaling $3,782.91, Lewis represented to him that the Wells would resume production in 30 to 60 days, and, in reliance on Lewis' statement, Acosta wired $3,782.91 to Insignia during the spring of 2009; and (2) in October 2009 Insignia and Lewis demanded a payment of $2,985.88; threatened that, if Acosta did not pay this amount in 10 days, he would lose his interest in the Wells; represented to him that a new operating company had taken over and required immediate payment of expenses; and induced him to sign a promissory note payable to Lewis, personally, on December 15, 2009. Although certain factual details are missing, such as the precise date on which Lewis made the various alleged misrepresentations and the method by which he made them—i.e. over the telephone, by email, or by letter—Acosta has pleaded enough factual details to satisfy the requirements of Rule 9(b). He alleges that Lewis

made the alleged misrepresentations, the general time frame during which the misrepresentations were made, and the context and content of each alleged misrepresentation. His allegations are thus sufficient to plausibly plead at least two predicate acts of "racketeering activity" by alleging that defendants committed mail or wire fraud by intentionally inducing him to send money and execute a promissory note through false representations by U.S. mail, telephone, and email.

C

"To establish a pattern of racketeering activity, [Acosta] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex, Inc.*, 2012 WL 2864510, at *2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)).  A pattern of racketeering activity includes two or more acts of racketeering activity.  *See* 18 U.S.C. § 1961(5).  "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'"  *Burzynski*, 989 F.2d at 742.  "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation and internal quotation marks omitted).  Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240.  Acosta has alleged two interrelated predicate acts of mail and wire fraud conducted through defendants' alleged false statements and threats that, as alleged, are not isolated events.  *Id.*  Thus Acosta has adequately pleaded that the predicate acts are related.

D

It is not enough, however, that the alleged predicate acts are related.  For a series of related predicate acts to constitute a RICO "pattern of activity," a plaintiff must also allege that the acts "amount to or threaten *continuing* racketeering activity."  *Burzynski*, 989 F.2d at 742.  "It is 'continuity' that assures a federal cause of action."  *Id*.  Continuity may be alleged as "either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'"  *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc*., 492 U.S. at 241).  A closed period of conduct may be properly pleaded by alleging "a series of related predicates extending over a substantial period of time."  *Id*. (citing *H.J. Inc*., 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.")).  An open period of conduct requires allegations of "a 'specific threat of repetition extending indefinitely into the future,'" or that "the predicates are a regular way of conducting defendant's ongoing legitimate business."  *Id*. (quoting *H.J. Inc*., 492 U.S. at 242-43) (some internal quotation marks omitted).

Courts in this circuit have repeatedly held that "[c]ontinuity cannot be established by multiple acts of fraud that are part of a single transaction."  *Orthoflex, Inc*., 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123); *see also Word of Faith*, 90 F.3d at 123 ("It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO.  [Fifth Circuit precedent] make[s] clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering

activity' has not been shown."); *Burzynski*, 989 F.2d at 734 ("*All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended. . . .   The conduct did not constitute or threaten long-term criminal activity."); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("there is no threat here of continued criminal acts. [Defendant's] acts which were alleged to have deprived [plaintiff] of a property interest were, when completed, without threat of repetition."); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger]."). When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743; *see also Calcasieu*, 943 F.2d at 1464 ("Short-term criminal conduct is not the concern of RICO.").

Acosta alleges only two acts of racketeering activity: defendants fraudulently induced him to pay Insignia $3,782.91 in the spring of 2009, and they fraudulently induced him to execute a promissory note in favor of Lewis on December 15, 2009.  He does not assert that defendants committed any criminal activity beyond these two instances of using false statements and threats to induce him to pay Insignia for its expenses. *See, e.g.*, Am. Compl. ¶¶ 16-22 (alleging the invoices were for "expenses," and not alleging any facts that would support the inference that the funds were actually for anything other than to cover legitimate operating expenses).  In other words, Acosta's allegations are limited to the contention that, over the span of 14 months, ending in December 2009, Insignia twice sought funds from him to cover operating and other expenses.  He does not plead any acts of fraud or other criminal

activity that occurred after December 15, 2009, does not allege that there were any victims of defendants' alleged criminal acts other than himself, and does not assert facts that would suggest any threat of continued criminal activity. *Cf. Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (holding that there was continuity because, "[u]nlike . . . precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit"). As in *Word of Faith*, the alleged acts of fraud were all part of a single, allegedly lawful endeavor—the collection of funds to cover expenses associated with the Wells—and there is no suggestion that, had Acosta not filed this lawsuit, the alleged criminal activity would have continued indefinitely. *See Word of Faith*, 90 F.3d at 123. In sum, Acosta has failed to plead the requisite continuity under RICO. *See Paul v. Aviva Life & Annuity Co.*, 2011 WL 2713649, at *6 (N.D. Tex. July 12, 2011) (Boyle, J.) ("Plaintiffs have not alleged facts of any other criminal activity by the alleged enterprise beyond the marketing and sale of a benefit trust funded by a cash-value whole life insurance plan. All of the predicate acts pleaded were part and parcel of the sale of Paul Plaintiffs' particular 419A(f)(6) plan. Therefore, Plaintiffs have failed to show that Aviva poses a continuing threat as a RICO person.").

Accordingly, the court grants defendants' motion to dismiss Acosta's civil RICO claim.[5]

---

[5]Because the first amended complaint fails to adequately plead continuity between the predicate acts, the court need not reach defendants' contentions that Acosta has failed to

IV

Acosta also asserts state-law claims under the DTPA and for common law fraud, negligent misrepresentation, negligent hiring, supervision, and/or management, and breach of contract.  Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).  Having dismissed Acosta's federal-law claim, the court in its discretion declines at this time to exercise supplemental jurisdiction over his state-law claims.[6]

V

Although the court is granting defendants' motion to dismiss under Rule 12(b)(6), it will permit Acosta to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often

---

plead a valid enterprise under RICO and to plead proximate cause.

[6]If the court later determines that Acosta has pleaded a federal-law claim on which relief can be granted, it will decide whether to exercise supplemental jurisdiction over the state-law claims, and, if it does, address any challenges that are properly made to these claims.  The court therefore declines at this time to consider any challenges to the state-law claims.

afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).[7]  Because there is no indication that Acosta cannot, or is unwilling to, cure the defects that the court has identified, the court grants Acosta leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

\*   \*   \*

For the reasons explained, the court grants defendants' motion to dismiss Acosta's civil RICO claim under Rule 12(b)(6).  Because the court is dismissing Acosta's federal-law claim, it declines at this time to exercise supplemental jurisdiction over Acosta's state-law claims.  The court grants Acosta leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.  The court denies defendants' motion to strike Acosta's amended complaint as moot.

**SO ORDERED**.

October 16, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[7]Although Acosta has already amended his complaint once, he did so before the court identified specific deficiencies in his pleadings.